UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
KID CAR NY, LLC,

                    Plaintiff-Counterclaim-Defendant,               19-cv-7929 (PKC)

          -against-                                                      OPINION
                                                                    AND ORDER

KIDMOTO TECHNOLOGIES LLC AND
NELSON NIGEL,

                    Defendants-Counterclaim-Plaintiffs.
------------------------------------------------------------------------x
KIDMOTO TECHNOLOGIES LLC,

          Third-Party Plaintiff,

          -against-

ANDREW C. ("TOPHER") MCGIBBON,

          Third-Party Defendant.
------------------------------------------------------------------------x

Castel U.S.D.J.

          This is an action between competitors in the transportation services market

targeting customers with children.  Kid Car NY, LLC ("Kid Car") is a transportation company

founded by Andrew C. McGibbon that has operated in the New York City metropolitan area

since 2006.  Kidmoto Technologies LLC ("Kidmoto") is a Kid Car competitor founded by

Nelson Nigel, who was formerly a driver for Kid Car.

          Kid Car and Kidmoto assert claims and counterclaims alleging infringement of

each other's marks and works, and unfair business practices targeting the companies' customers

and drivers.  Before the Court is Kidmoto and Nigel's motion to dismiss the Third Amended

Complaint (the "Complaint") and Kid Car and McGibbon's partial motion to dismiss the

1

Amended Counterclaims and Third-Party Complaint (the "Counterclaim").  The Court will address each motion in turn.

I.   THE MOTION TO DISMISS KID CAR'S THIRD AMENDED COMPLAINT.

A.   <u>Kid Car's Complaint</u>

Kid Car has operated a transportation service for customers with children since 2006.  (Compl. ¶ 1).  The Company's mission is to provide "Safe Transport for Children" with trained drivers and car seats.  (Compl. ¶ 11).  Kid Car offers a variety of services including "Kid Car Newborn" (rides from the hospital), "Kid Car Airport" (airport rides), "Kid CarPool" (shared rides for kids), and "Kid Car by the Hour" (customer directed service).  (Compl. ¶ 12). According to the Complaint, Kid Car has a "well-earned reputation for safe and quality service" and points to favorable reviews and recommendations on websites such as Google and Yelp as well as print and online publications.  (Compl. ¶ 18).

Since its formation in 2006, Kid Car has continuously used the unregistered mark "KID CAR" as a trade name and service mark.  (Compl. ¶ 13).  The Complaint alleges that the words "kid car" have previously been used to describe certain children toys and games but not to describe a transportation service focused on children.  (Compl. ¶ 14).  According to Kid Car, other competitors in the ride services market for children including the four largest companies, do not use the words "kid" and "car" consecutively on their websites.  (Compl. ¶ 15).  The Complaint also annexes Google search results for the term "kid car" without quotes.  (Compl. ¶ 20 and Ex. A).  The search results show that the first two listings and three of the top five results are for Kid Car and none of the other first "51 search results was for the web site of another transportation provider."  (Compl. ¶ 20).

In 2015, Kid Car offered consumers the ability to request rides using a mobile phone "app" reservation system.  (Compl. ¶¶ 22–23).  The first version of the app did not work well, and in January 2016, Kid Car engaged a "provider of generic apps for car transportation services to develop and customize the provider's generic app to Kid Car's unique specification." (Compl. ¶ 25).  The new app ("the Kid Car App") was launched in April 2016.  (Compl. ¶ 25). The app developer authorized Kid Car to copyright the text on the screens of the Kid Car App. (Compl. ¶ 26).  On February 26, 2019, Kid Car received a copyright registration for this text. (Compl. ¶ 26 and Ex. B).

Kid Car's Complaint alleges that it has promoted its services by engaging in extensive marketing efforts, receiving favorable media coverage, and engaging in brand partnerships.  Until "relatively recently" Kid Car did not engage in significant "web advertising" and instead focused on direct promotions.  (Compl. ¶ 15).  These efforts include marketing calls, visits or emails directed to hospital maternity wards, doctor's offices, nursery schools, activity centers, hotels and public parks in Manhattan and Brooklyn.  (Compl. ¶ 15).  Kid Car has also been "favorably profiled in the New York Times, The Washington Post, The Daily News, The New York Post, Columbia College Today, AM New York, MOMMY Poppins, and on CBS 2 and Fox 5 News."  (Compl. ¶ 16).  The Company has appeared in advertising campaigns on behalf of American Express and in a product endorsement for Safeguard, a provider of car restraints for children.  (Compl. ¶ 16).

Kidmoto is a competitor of Kid Car started by one its former drivers, Nelson Nigel.  (Compl. ¶ 1).  Nigel, the CEO of Kidmoto, drove for Kid Car starting in September 2015

and was terminated in May 2017 after Kid Car became aware of Kidmoto's operations.  (Compl. ¶¶ 8, 27, 34).

Kidmoto does business under various names that all contain the word "Kidmoto." (Compl. ¶ 29).  The Complaint alleges that in May 2016 Nigel changed the name of an existing LLC to "Kidmoto, LLC" and later that year changed its name again to "Kidmoto Technologies, LLC."  (Compl. ¶ 29).  The Complaint asserts that the Kidmoto name was intended to create consumer confusion with the "KID CAR" mark and take advantage of Kid Car's reputation. (Compl. ¶ 30).

In July 2019, Kid Car became aware that Kidmoto used the "Kid Car" mark in its Google Adwords.  (Compl. ¶ 37).  By purchasing Adwords from Google, Kidmoto's advertisement is "placed before the results of natural searches by prospective customers." (Compl. ¶ 38).  The Complaint alleges that Kidmoto's resulting advertisements on Google used the text "Kid Car" in its ad's "headline," which is displayed in bold blue lettering and is a hyperlink to Kidmoto's website.  (Compl. ¶ 39).  Exhibit D to the Complaint shows instances of allegedly infringing use of the "KID CAR" mark in Kidmoto advertisements or posts on Google, Facebook and Youtube.  (Compl. Ex. D).  Kid Car also states that "Kidmoto used variants of [p]laintiff's corporate name, 'Kid Car NY, LLC'" in posts on Plurk and Reddit.  (Compl. ¶ 42).

Kid Car further alleges that Kidmoto copied the Kid Car App starting "at or about the time [Kidmoto] launched its service."  (Compl. ¶ 32).  The Complaint annexes screenshots comparing the Kid Car App with Kidmoto's app.  (Compl. Ex. C).

Kid Car's Complaint asserts claims against Kidmoto and Nigel under the Lanham Act, 15 U.S.C. § 1125(a) for unfair competition (Count I); 17 U.S.C. § 501, et seq. for copyright

infringement (Count II); and New York common law for unfair competition (Count III),

trademark infringement (Count IV) and unjust enrichment (Count V).

     B.  Rule 12(b)(6) Standard

     Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662,

678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In assessing

the sufficiency of a pleading, a court must disregard legal conclusions, which are not entitled to

the presumption of truth.  Id.  Instead, the Court must examine the well-pleaded factual

allegations, which are accepted as true, and "determine whether they plausibly give rise to an

entitlement to relief."  Id. at 678–79.  "Dismissal is appropriate when 'it is clear from the face of

the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims

are barred as a matter of law.'"  Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE, 763

F.3d 198, 208–09 (2d Cir. 2014) (quoting Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir.

2000)).

     A court reviewing a Rule 12(b)(6) motion "does not ordinarily look beyond the

complaint and attached documents in deciding a motion to dismiss brought under the

rule."  Halebian v. Berv, 644 F.3d 122, 130 (2d Cir. 2011) (citing Staehr v. Hartford Fin. Servs.

Grp., Inc., 547 F.3d 406, 425 (2d Cir.2008)).  A court may, however, "consider 'any written

instrument attached to [the complaint] as an exhibit or any statements or documents incorporated

in it by reference . . . and documents that the plaintiffs either possessed or knew about and upon

which they relied in bringing the suit.'"  Stratte-McClure v. Morgan Stanley, 776 F.3d 94, 100

(2d Cir. 2015) (first alteration in original) (quoting Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir.

2000)).

C.  Discussion

1.  Lanham Act and Common Law Trademark and Unfair Competition Claims.

Kid Car has not registered "KID CAR" as a service mark and trade name with the United States Patent and Trademark Office ("PTO") and, hence asserts no claim under section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).  It asserts, instead, a claim under section 43(a) of the Lanham Act, which prohibits a person from using "any word, term, name, symbol, or device, or any combination thereof" that is "likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities . . . ."  15 U.S.C. § 1125(a).  "Section 43(a) is a broad federal unfair competition provision which protects unregistered trademarks similar to the way that section 32(1) . . . protects registered marks."  Chambers v. Time Warner, Inc., 282 F.3d 147, 155 (2d Cir. 2002).  To prevail on a claim under section 43(a) "plaintiff must demonstrate that it has a valid mark entitled to protection and that the defendant's use of it is likely to cause confusion."  Time, Inc. v. Petersen Pub. Co., 173 F.3d 113, 117 (2d Cir. 1999) (internal quotation marks omitted).

Kidmoto contends that Kid Car's unregistered mark is not entitled to protection because the mark is either generic, or in the alternative, is descriptive and has failed to acquire secondary meaning among consumers.  It does not challenge the adequacy of Kid Car's allegations of consumer confusion.

"An unregistered mark is protectable if it would qualify for protection as a registered trademark under § 2 of the Lanham Act, 15 U.S.C. § 1052(b)."  Trombetta v. Novocin, 414 F. Supp. 3d 625, 630 (S.D.N.Y. 2019).  To determine whether a mark is valid and protectible, courts will first classify the mark as generic, descriptive, suggestive, arbitrary, or fanciful.  Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, 344–45 (2d Cir.

6

1999); accord Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d 155, 160 (2d Cir. 2016).

The categories assess "the distinctiveness of the mark" to determine whether the mark is

"capable of distinguishing the products it marks from those of others." Lane Capital Mgmt., 192

F.3d at 344. The Second Circuit has defined the categories of marks as follows:

> A mark is generic if it is a common description of products and refers to the genus
> of which the particular product is a species. A mark is descriptive if it describes
> the product's features, qualities, or ingredients in ordinary language or describes
> the use to which the product is put. A mark is suggestive if it merely suggests the
> features of the product, requiring the purchaser to use imagination, thought, and
> perception to reach a conclusion as to the nature of the goods. An arbitrary mark
> applies a common word in an unfamiliar way. A fanciful mark is not a real word
> at all, but is invented for its use as a mark.

Id. (citing Genesee Brewing Co., Inc. v. Stroh Brewing Co., 124 F.3d 137, 143 (2d Cir.
1997)).

"Marks that are arbitrary, fanciful, or suggestive are considered 'inherently

distinctive,' and are automatically entitled to protection under the Lanham Act . . . ." Genesee

Brewing Co., 124 F.3d at 143. A "descriptive" mark is entitled to trademark protection only if

the mark has "acquired distinctiveness" or "secondary meaning" among consumers. Lane

Capital Mgmt., 192 F.3d at 344. Generic marks are not ordinarily entitled to protection. Id. In

United States Patent and Trademark Office v. Booking.com B.V., 140 S. Ct. 2298 (2020), the

Supreme Court reaffirmed the principal that "whether a term is generic depends on its meaning

to consumers." Id. at 2306. It further explained that "[a] compound of generic elements is

generic if the combination yields no additional meaning *to consumers* capable of distinguishing

the goods or services." Id. (emphasis in original) (discussing Goodyear's India Rubber Glove

Mfg. Co. v. Goodyear Rubber Co., 128 U.S. 598 (1888)).

The Second Circuit has repeatedly explained that the "classification of a mark is a

factual question" that turns on "how the purchasing public views the mark." Lane Capital

Management, 192 F.3d at 344; Cross Commerce Media, 841 F.3d at 162 ("A trademark's

inherent distinctiveness is a fact-intensive issue."); <u>Courtenay Commc'ns Corp. v. Hall</u>, 334 F.3d 210, 215 (2d Cir. 2003) ("The pleadings and documents necessarily relied upon by plaintiff's complaint, which were all that the district court could rightfully consider in deciding the motion to dismiss for failure to state a claim . . . are insufficient for determining the critical fact of how the public views the 'iMarketing News' mark."); <u>see also</u> <u>Now-Casting Econ., Ltd. v. Econ. Alchemy LLC</u>, 18-cv-2442 (ER), 2019 WL 4640219, at *4 (S.D.N.Y. Sept. 24, 2019) ("Accordingly, after a thorough review of the pleadings, the Court holds that [defendant] has not alleged a non-disputed sufficient factual basis for inferring who the relevant public is, and subsequently whether the terms at issue are generic."); <u>Manning Int'l Inc. v. Home Shopping Network, Inc.</u>, 152 F. Supp. 2d 432, 436 (S.D.N.Y. 2001) ("At this early stage, when plaintiff has not had an opportunity to submit supportive proof, such a factual analysis is inappropriate.").

At this stage of the litigation, the Complaint plausibly alleges that the "KID CAR" mark is not a generic term used as a common descriptor for car services targeting children. The Complaint plausibly alleges that no other competitor uses "Kid Car" in association with transportation services. (Compl. ¶¶ 13–14). Based solely on the allegations in the Complaint, the Court is unable to determine whether there is "a recognized category of [services] in the market place known as" Kid Car services. <u>Genesee Brewing</u>, 124 F.3d at 148. In the absence of a more developed factual record, there is no basis for the Court to decide the meaning to consumers of combining "Kid" and "Car." <u>See</u> <u>Booking.com B.V.</u>, 140 S. Ct. at 2306.

Kidmoto further urges that even if "KID CAR" is not generic, it is a descriptive mark that lacks secondary meaning. As noted above, a descriptive mark is only protectable when it has acquired secondary meaning. "Secondary meaning attaches when the name and the business have become synonymous in the mind of the public, submerging the primary meaning

of the term in favor of its meaning as a word identifying that business." Time, Inc., 173 F.3d at

117 (internal quotation marks omitted).  The Second Circuit has identified six factors that are

relevant in determining secondary meaning: "(1) advertising expenditures, (2) consumer studies

linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5)

attempts to plagiarize the mark, and, (6) length and exclusivity of the mark's use." Genesee

Brewing, 124 F.3d at 143 n.4 (internal quotation marks omitted).  "None of these elements is

determinative and not every one of them must be proved to make a showing of secondary

meaning." GeigTech E. Bay LLC v. Lutron Elecs. Co., 352 F. Supp. 3d 265, 282 (S.D.N.Y.

2018) (quoting Landscape Forms Inc. v. Columbia Cascade Co., 117 F.Supp.2d 360, 366

(S.D.N.Y. 2000)).

       Whether secondary meaning has been established is "an inherently factual

inquiry." Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc., 696 F.3d 206, 226

(2d Cir. 2012) (quoting Yarmuth-Dion, Inc. v. D'ion Furs, Inc., 835 F.2d 990, 993 (2d Cir.

1987)).  Accordingly, courts in this district have concluded the test for secondary meaning raises

factual questions that ordinarily may not be decided on a motion to dismiss.  See A.V.E.L.A.,

Inc. v. Estate of Marilyn Monroe, LLC, 131 F. Supp. 3d 196, 213 (S.D.N.Y. 2015) (collecting

cases and stating "the question of whether a descriptive mark has acquired the secondary

meaning necessary to be distinctive generally should not–and here cannot–be resolved on a

motion to dismiss"); Kaplan, Inc. v. Yun, 16 F. Supp. 3d 341, 347–49 (S.D.N.Y. 2014) (denying

motion to dismiss claim for trademark infringement where "defendants essentially raise a dispute

of fact" regarding whether the complaint alleged secondary meaning).

       Kid Car has plausibly alleged that the "KID CAR" mark has acquired secondary

meaning.  The Complaint alleges that Kid Car spent substantial time and expense since its

founding in 2006 to promote the "KID CAR" mark.  It details marketing visits and distribution

of marketing materials to hospitals, doctor's offices and other locations in the New York City

Area.  (Compl. ¶ 15).  Kid Car further alleges that it has been profiled favorably by local and

national media outlets, none of which were solicited by Kid Car.  (Compl. ¶ 16).  The Complaint

details how Kid Car has "developed a well-earned reputation for safe and quality service" as

evidenced by positive and unsolicited reviews and recommendations by consumers.  (Compl. ¶

18).  Kid Car attaches the partial results of a Google search for the phrase "kid car" in which

some of the top listings relate to Kid Car but does not return results for other transportation

service providers.  (Compl. ¶ 19).

Additionally, "[t]o qualify for trademark protection, an owner of a descriptive

mark must demonstrate that the mark had acquired secondary meaning before its competitor

commenced use of the mark."  PaperCutter, Inc. v. Fay's Drug Co., 900 F.2d 558, 564 (2d Cir.

1990).  The Complaint plausibly alleges that the "KID CAR" mark acquired secondary meaning

prior to Kidmoto's alleged infringement.  Kid Car started its operations in 2006 and viewed in

the light most favorable to Kid Car, the allegations establish that the mark acquired secondary

meaning prior to Kidmoto's alleged infringing conduct starting around July 2019.[1]  (Compl. ¶¶

37, 42); see Kaplan, Inc., 16 F. Supp. 3d at 348–49 (denying motion to dismiss and noting that

"there is no magic time span that confers secondary meaning").  Accordingly, the Court

concludes that the Complaint alleges the "KID CAR" mark has acquired secondary meaning and

is therefore protectable as an unregistered mark.

There remains Kidmoto's argument that Kid Car conceded its mark is not

inherently distinctive based on having recently filed a "2(f) application" with the PTO.  An

---

[1] Kidmoto itself did not start its operations until 2016.  In its opposition, Kid Car states that the Complaint does not
allege the use of the Kidmoto trade name itself infringes on Kid Car's mark.  (Opp. at 15).

applicant may seek registration on the Principal Register under Section 2(e) of the Lanham Act

for inherently distinctive marks or under Section 2(f) based on acquired distinctiveness of a

descriptive mark.  See McCarthy on Trademarks and Unfair Competition § 19:11 (5th ed.).  Kid

Car did not submit its trademark application with the Complaint, but the Court may properly take

judicial notice of it under Rule 201(b)(2), Fed. R. Evid.  See Rockland Exposition, Inc. v. All. of

Auto. Serv. Providers of New Jersey, 894 F. Supp. 2d 288, 301 & n.6 (S.D.N.Y. 2012) (taking

judicial notice of trademark application).  According to the PTO's Trademark Electronic Search

System, Kid Car filed a 2(f) application on January 10, 2020 that is pending and bears the Serial

No. 88754897.[2]

Kidmoto's argument here fails for two reasons.  First, the Court does not need to

find Kid Car's mark is inherently distinctive for its trademark infringement claim to survive a

motion to dismiss.  Second, Kidmoto cites to out-of-circuit precedent, which stands for little

more than the proposition that an applicant seeking registration under section 2(f) of the Lanham

Act concedes that its mark is not inherently distinctive for purposes of that application.  Kidmoto

fails to show why estoppel or another basis should preclude Kid Car from arguing its mark is

inherently distinctive in this Action.  See Perfect Pearl Co. v. Majestic Pearl & Stone, Inc., 887

F. Supp. 2d 519, 534 (S.D.N.Y. 2012) ("[I]n general, courts do not bind parties to their

statements made or positions taken in ex parte application proceedings in front of the PTO.");

Kaplan, Inc., 16 F. Supp. 3d at 348 ("Even if the plaintiffs had taken a different position before

---

[2] http://tmsearch.uspto.gov/bin/showfield?f=doc&state=4806:g2o3jm.2.2 (last visited Feb. 2, 2021).  Kidmoto has filed an opposition to Kid Car's application.  Upon the consent of the parties, the Trademark Trial and Appeal Board ordered that the opposition proceeding be suspended pending final determination of this Action.  See Kidmoto Technologies, LLC v. Kid Car NY, LLC, Opposition No. 91255873, Dkt. # 8 (Nov. 5, 2020), https://ttabvue.uspto.gov/ttabvue/v?pno=91255873&pty=OPP&eno=8.

the PTO, to the extent that the defendants argue that the plaintiffs are prevented from taking an inconsistent position in this case, no estoppel applies here.").

The Court concludes that Kid Car has plausibly alleged a claim under section 43(a) of the Lanham Act based on Kidmoto's infringement of its unregistered mark "KID CAR." For purposes of this motion, the Court concludes that the mark is entitled to protection because it is descriptive and has acquired secondary meaning among consumers.  Kidmoto's attack on Kid Car's claim may look very differently on a fully developed evidentiary record.

Because Kid Car has stated a claim for trademark infringement under the Lanham Act, it has also plausibly alleged a claim of trademark infringement under New York common law.  See, e.g., Pulse Creations, Inc. v. Vesture Group, Inc., 154 F. Supp. 3d 48, 54 (S.D.N.Y. 2015) (citing Smith v. Mikki More, LLC, 59 F. Supp. 3d 595, 616 (S.D.N.Y. 2014)).

Additionally, Kid Car has stated a claim for unfair competition under New York Law.  "The elements of a federal trademark-infringement claim and a New York unfair competition claim are almost indistinguishable, except that New York requires an additional element of bad faith."  Chanel, Inc. v. Richardson, 17-cv-4565 (PKC), 2018 WL 6097865, at *2 (S.D.N.Y. Nov. 20, 2018) (internal quotation marks omitted); see also WowWee Grp. Ltd. v. Meirly, 18-cv-706 (AJN), 2019 WL 1375470, at *8 (S.D.N.Y. Mar. 27, 2019) ("A plaintiff has carried this burden when it states a Lanham Act claim coupled with a showing of bad faith or intent."); Giggle, Inc. v. netFocal, Inc., 856 F. Supp. 2d 625, 647 (S.D.N.Y. 2012) ("Unfair competition under New York Law shares most of the same elements as a claim for trademark infringement under the Lanham Act.").  Here, Kid Car plausibly alleges that Kidmoto acted in bad faith.  The Complaint asserts that soon after Nigel began driving for Kid Car, he decided to start Kidmoto as a competitor.  (Compl. ¶¶ 28–29).  It further alleges that the name Kidmoto was

12

intended to create consumer confusion between Kidmoto's services and Kid Car's.  (Compl. ¶ 30); see Star Indus., Inc. v. Bacardi & Co., 412 F.3d 373, 388 (2d Cir. 2005) ("Bad faith generally refers to an attempt by a junior user of a mark to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products."); Rockland Exposition, Inc., 894 F. Supp. 2d at 328 ("In assessing bad faith, the Court considers 'whether the defendant adopted its mark with the intention of capitalizing on plaintiff[']s reputation and goodwill and any confusion between his and the senior user's product.'").

Defendants' motion to dismiss Kid Car's claims pursuant to 15 U.S.C. § 1125(a) of the Lanham Act (Count I), common law unfair competition (Count III) and common law trademark infringement (Count IV) will be denied.

## 2.   Copyright Infringement under 17 U.S.C. § 501.

To state a claim for copyright infringement pursuant to 17 U.S.C. § 501, a plaintiff must establish two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991).  This requires a copyright owner to "demonstrate that (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's."  Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 110 (2d Cir. 2001) (internal quotation marks and citation omitted) (emphasis in original).

A certificate of registration within five years of first publication of a work constitutes prima facie evidence of ownership of a valid copyright.  17 U.S.C. § 410(c); Urbont v. Sony Music Entm't, 831 F.3d 80, 88–89 (2d Cir. 2016) (citing 17 U.S.C. § 410(c)).  The Complaint alleges that Kid Car applied and received a registration from the United States

13

Copyright Office covering the text of the screens in the Kid Car App.  (Compl. ¶ 26).  Exhibit B to the Complaint attaches the Certificate of Registration which shows an effective date of February 26, 2018 and a date of first publication of April 1, 2016.

The Complaint alleges that Kidmoto copied the text of the screens of the Kid Car App for its own app.  (Compl. ¶ 58).  It attaches a side-by-side comparison of the two apps showing the alleged infringement.  (Compl. Ex. C.)  As depicted in Exhibit C, the Kid Car App has a series of three screens.  The first screen prompts users to "Choose a Service" and lists nine options such as "Sedan – 0 Car Seat," "Minivan – 1 Car Seat" or "SUV – 2 Car Seats."  On the second screen, users are asked to enter the pickup and drop off locations, the time of the requested ride and provides an option to enter "extra details" or signify that it is an "airport" ride. The second screen also lets users select the type of car seat.  In order to do so, users appear to click an arrow on the second screen that prompts a third screen asking them to choose the type of car seat, e.g., "Rear-Facing 15-40 lbs."

Kidmoto argues that the screens of the Kid Car App do not constitute material that is protectable as copyright.  Its motion does not contest that Kid Car has sufficiently alleged actual copying of the Kid Car App by Kidmoto and that there is substantial similarity between the Kid Car App and Kidmoto's app.

In order to qualify for copyright protection, the work must be original to the author, meaning only that it be "independently created by the author" and "possess at least some minimal degree of creativity."  Feist Publications, 499 U.S. at 348; see also Premier Fabrics, Inc. v. Woodland Trading Inc., 42 F. Supp. 3d 549, 554 (S.D.N.Y. 2014) ("Copyright's mandate of originality requires only independent creation, however, not novelty.").  In this case, Kid Car's "certificate[] of registration constitute[s] prima facie evidence of the validity not only of [its]

copyright[], but also of the originality of [its] works." Boisson v. Banian, Ltd, 273 F.3d 262, 268 (2d Cir. 2001).

"The only elements of a work that are entitled to copyright protection are those that are original." Matthew Bender & Co. v. W. Pub. Co., 158 F.3d 674, 681 (2d Cir. 1998). It is well established that "facts and ideas are not protected by copyright." Abdin v. CBS Broadcasting Inc., 971 F.3d 57, 67 (2d Cir. 2020). Additional material not subject to copyright include "[w]ords and short phrases such as names, titles, and slogans; familiar symbols or designs; mere variations of typographic ornamentation, lettering or coloring; mere listing of ingredients or contents." 37 C.F.R. § 202.1(a).

"A compilation of non-protectible facts is copyrightable if it 'features an original selection or arrangement of facts,' so that the selection or arrangement 'possesses at least some minimal degree of creativity.'" MyWebGrocer, LLC v. Hometown Info, Inc., 375 F.3d 190, 193 (2d Cir. 2004) (internal citations omitted; quoting Feist Publications, 499 U.S. at 345, 350). In this case, "the copyright is limited to the particular selection or arrangement" and "[i]n no event may copyright extend to the facts themselves." Feist Publications, 499 U.S. at 350–51; accord Boisson, 273 F.3d at 268 ("[A]n element within a work may be unprotectible even if other elements, or the work as a whole, warrant protection.").

Not all decisions regarding selection or arrangement are entitled to copyright protection. Originality and creativity in selection and arrangement depends on "(i) the total number of options available, (ii) external factors that limit the viability of certain options and render others non-creative, and (iii) prior uses that render certain selections 'garden variety.'" Matthew Bender, 158 F.3d at 682–83.

In MyWebGrocer, LLC v. Hometown Info, Inc., the Second Circuit addressed whether the product descriptions used by an online grocery shopping website were sufficiently creative to be copyrightable.  375 F.3d 190 (2d Cir. 2004).  It affirmed the district court's denial of a preliminary injunction but found that plaintiff showed fair grounds for litigation regarding whether the material was protectable.  Id. at 193–94.  The Second Circuit concluded that the determination would require a more complete factual record.  Compare Id. at 193 ("[A] trier of fact might conclude that the various providers have different concepts of the most attractive and useful product description."), with id. at 194 ("[A] broader comparison of product descriptions by various companies may persuade a trier . . . that the differences between various companies' descriptions are so slight in the aggregate as to be noncreative . . . ."); see Kregos v. Associated Press, 937 F.2d 700, 704–05 (2d Cir. 1991) (concluding that the decision to express a pitcher's performance in terms of nine statistics from "at least scores of available statistics about pitching performance available to be calculated from the underlying data and therefore thousands of combinations of data that a selector can choose to include in a pitching form" was not necessarily obvious or self-evident.).

Drawing all reasonable inferences in favor of Kid Car, the Court concludes that the Complaint alleges the text of the screens of the Kid Car App is protectable as a selection or arrangement of information.  Kid Car's copyright registration gives rise to a presumption of the originality of the work.  Kid Car has plausibly alleged originality in how the text of the screens in its app expresses Kid Car's services.  This includes the information that Kid Car decided to include or exclude from the descriptions in the app and how such information is arranged.  On a more complete factual record, the Court might conclude that Kid Car's selection or arrangement of information was simply industry convention or that the Kid Car App made garden-variety

selections or arrangements.  But at this stage, Kidmoto has failed to rebut the presumption and demonstrate that the Kid Car App lacks originality.  See Premier Fabrics, Inc., 42 F. Supp. 3d at 554 (concluding on a motion to dismiss that defendant failed to "rebut the presumption to which plaintiffs are entitled" to regarding the originality of a registered work).

Kidmoto further argues that Kid Car's App is not subject to copyright protection because it constitutes a "method of operation" under 17 U.S.C. § 102(b).  However, Kid Car does not claim a copyright in an app that enables users of a transportation service to schedule rides.  Kid Car only alleges that it has a valid copyright in the text of the app's screens.  It further alleges that other generic app platforms exist that Kidmoto could have used "without copying the text and format of the Kid Car App."  (Compl. ¶ 33).

Kidmoto's motion to dismiss Count II of the Complaint for copyright infringement will be denied.

### 3.   Unjust Enrichment.

To state a claim of unjust enrichment, "[a] plaintiff must show that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered."  Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 182 (2011) (internal quotation marks omitted; second alteration in original).  Under New York law unjust enrichment is "available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff."  Corsello v. Verizon N.Y., Inc., 18 N.Y.3d  777, 790 (2012).

A claim of unjust enrichment requires "a relationship between the parties that could have caused reliance or inducement."  Mandarin Trading, 16 N.Y.3d at 182–83.  "In addition, a plaintiff must allege that 'they performed services for the defendant, which caused the

defendant's unjust enrichment.'"  GeigTech East Bay LLC, 352 F. Supp. 3d at 286 (quoting Int'l

Diamond Imps., Inc. v. Med Art, Inc., 15-cv-4045 (KMW), 2017 WL 2839640, at *10 (S.D.N.Y.

June 29, 2017)) (collecting cases).

       Kid Car's unjust enrichment claim based on Kidmoto's alleged infringement of its

mark and copyright will be dismissed.  (Compl. ¶¶ 75–76).  The Complaint fails to allege a

relationship that could have caused reliance and instead only alleges "that the parties are

competitors."  GeigTech East Bay LLC, 352 F. Supp. 3d at 286–87 (dismissing unjust

enrichment claim even though plaintiff successfully alleged a violation of the Lanham Act);

Kaplan, Inc., 16 F. Supp. 3d at 353 (same); see also Mandarin Trading Ltd., 16 N.Y.3d at 183

("Without sufficient facts, conclusory allegations that fail to establish that a defendant was

unjustly enriched at the expense of a plaintiff warrant dismissal.").  Accordingly, Kid Car has

failed to state a claim for unjust enrichment under New York law.

## II.  THE PARTIAL MOTION TO DISMISS KIDMOTO'S COUNTERCLAIM AND THIRD-PARTY COMPLAINT.

       Counterclaim-defendants Kid Car NY, LLC and Andrew C. McGibbon move to

dismiss counterclaim-plaintiff Kidmoto Technologies LLC's claims under Section 43(a) of the

Lanham Act for unfair competition (Count I), New York common law for trademark

infringement (Count III), New York common law for unfair competition (Count IV), and

Tortious Interference with Business Relations (Count V).  A motion to dismiss a counterclaim is

reviewed pursuant to the same standards of Rule 12(b)(6), Fed. R. Civ. P.  See, e.g., Downtown

Music Publishing, LLC v. Peloton Interactive, Inc., 436 F. Supp. 3d 754, 762 (S.D.N.Y. 2020).

### A.  Kidmoto's Pleading

      According to Kidmoto's Counterclaim, Kid Car has failed to operate a profitable

business, develop positive goodwill with consumers, or effectively market its services.

(Countercl. ¶ 20).  It alleges that in a video on Kid Car's YouTube channel, McGibbon stated that "despite being in business for 13 years, Kid Car NY LLC has never advertised," prior to 2019.  (Countercl. ¶ 24).  A substantial part of the Counterclaim, perhaps gratuitously, is devoted to describing and reproducing negative customer reviews of Kid Car from websites such as Yelp, Google and TripAdvisor (Countercl., at p. 21–28) and highlighting positive media reports and consumer reviews for Kidmoto.  (Countercl., at p. 30–35).

Kidmoto is the owner of the registered federal trademark "KIDMOTO," Registration No. 6018475.  (Countercl. ¶ 63).  Kidmoto alleges that around June 2018, Kid Car began advertising on Google using the trademark "KIDMOTO" as an ad keyword, meaning that people who search for "Kidmoto" would be presented with results for "Kid Car." (Countercl. ¶ 71).  The Counterclaim further alleges that Kid Car's resulting advertisements used the words "Kid Car."  (Countercl. ¶ 64).  Kidmoto alleges that Kid Car's advertising infringes on Kidmoto's registered mark and deceives consumers.  (Countercl. ¶¶ 64, 71).  The Counterclaim identifies a Kidmoto customer who filed a complaint with Kid Car instead of Kidmoto due to the allegedly deceptive advertisements.  (Countercl. ¶ 73).

The Counterclaim also alleges that Kid Car, at McGibbon's direction, engaged in three business practices that violated the New York common law.  First, Kidmoto alleges that McGibbon threatened drivers to deter them from working for Kidmoto or operating transportation services that compete with Kid Car.  (Countercl.  ¶¶ 52–53).  The Counterclaim provides two examples: a driver named Seth Behrman who McGibbon allegedly threatened with legal action due to driving for Kidmoto (Countercl. ¶ 51), and a former Kid Car driver named Elizabeth Shepard who McGibbon allegedly threatened with a lawsuit after she started a competitor.  (Countercl. ¶ 53–54).  Second, Kid Car allegedly initiated a spam attack on a blog's

website after demanding that the blog change its coverage of Kid Car.  (Countercl. ¶¶ 57–58).

Third, Kidmoto alleges that Kid Car hacked Kidmoto's website in or around September 2017

after finding out that Kidmoto was operating a competing service.  (Countercl. ¶ 60).

      B.  <u>Discussion</u>

            1.  <u>Lanham Act and Common Law Trademark Infringement.</u>

Briefly, to prevail on a claim of trademark infringement a plaintiff must show (1)

that its mark merits protection and (2) that defendant's use of a similar mark is likely to cause

consumer confusion.  Marks that are inherently distinctive are "automatically protected."  <u>Lane</u>

<u>Capital Mgmt.</u>, 192 F.3d at 344.  A registered mark, like the one at issue here, is presumptively

distinctive.  <u>Id.</u> at 345.  The Counterclaim alleges that Kidmoto owns the registered mark

"KIDMOTO," Registration No. 6018475.  (Countercl. ¶ 68).  Counterclaim defendants have not

contested the distinctiveness or validity of the "KIDMOTO" mark.  Accordingly, Kidmoto's

mark satisfies the first prong of the test.

Kid Car raises two primary arguments in opposition to Kidmoto's trademark

infringement claim.  First, it argues that Kid Car used the "KID CAR" trade name prior to

Kidmoto entering the market and acquiring protectable rights in its mark.  Second, Kid Car urges

that its use of "KIDMOTO" as a Google keyword combined with the other factual allegations, as

a matter of law, are insufficient to allege a likelihood of consumer confusion.  The Court will

address each of these arguments in turn.

Kid Car urges that Kidmoto's claim of trademark infringement based on Kid Car

using its own name in internet advertisements cannot stand as a result of Kid Car's prior use of

its mark.  <u>See</u> <u>Perfect Pearl</u>, 887 F. Supp. 2d at 530 (citing <u>United Drug Co. v. Theodore</u>

<u>Rectanus Co.</u>, 248 U.S. 90, 97 (1918)) ("It is well-settled that rights to a mark derive not from a

registration or adoption of a mark but from its use.").  "In order to assert a prior use defense,

defendants must prove four elements: (1) present rights in the mark; (2) acquired prior to the date of registration; (3) continual use of the mark since that date; and (4) use prior to the registrant on the goods or services that are in issue." Pilates, Inc. v. Current Concepts, Inc., 120 F. Supp. 2d 286, 312 (S.D.N.Y. 2000). "To prove bona fide usage, the proponent of the trademark must demonstrate that his use of the mark has been deliberate and continuous, not sporadic, casual or transitory." La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc., 495 F.2d 1265, 1271–72 (2d Cir.1974); De Beers LV Trademark Ltd. V. DeBeers Diamond Syndicate, Inc., 440 F. Supp. 2d 249, 272 (S.D.N.Y. 2006).

Based solely on the allegations in the Counterclaim which must be accepted as true for the purposes of the motion and other materials the Court may properly consider on a motion to dismiss, Kid Car's prior use defense does not warrant dismissal at the pleadings stage. The Counterclaim alleges Kid Car was founded in 2006, has failed to be "cash flow positive for 12 of the last 14 years" and currently operates in the transportation services market targeting children.  (See generally Countercl. ¶¶ 1-4).  It further alleges that Kidmoto first used the "KIDMOTO" mark in commerce on November 14, 2016.  (Countercl. ¶ 70).  However, the Counterclaim does not provide a factual basis for the Court to conclude that Kid Car has "presents rights in the mark" or that its use of the mark has been "deliberate and continuous."  At most, the allegations in the Counterclaim establish that Kid Car has operated as a business since 2006, but not that Kid Car has used its mark continually over that period.  Kid Car further argues that if the "KID CARK" service mark and trade name were not entitled to protection because it is generic or descriptive, it would mean that it is not foreclosed from using the name.  But Kid Car does not concede that "KID CAR" is generic or otherwise not protectible.

Second, Kid Car urges that Kidmoto has failed to plausibly allege a likelihood of consumer confusion. "'The crucial issue in an action for trademark infringement is whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods [or services] in question.'" Savin Corp. v. Savin Grp., 391 F.3d 439, 456 (2d Cir. 2004) (alterations omitted) (quoting Mushroom Makers, Inc. v. R.G. Barry Corp., 580 F.2d 44, 47 (2d Cir. 1978)). In determining whether there is consumer confusion, courts look to the familiar "Polaroid factors" first set forth in Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961). See, e.g., Sterling Drug, Inc. v. Bayer AG, 14 F.3d 733, 740 (2d Cir. 1994). The Polaroid factors are "(1) the strength of the mark, (2) the similarity of the two marks, (3) the proximity of the products, (4) actual confusion, (5) the likelihood of plaintiff[s] bridging the gap, (6) defendant's good faith in adopting its mark, (7) the quality of defendant's products, and (8) the sophistication of the consumers." Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 116 (2d Cir. 2006).

"The application of the Polaroid test is 'not mechanical, but rather, focuses on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused.'" Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 115 (2d Cir. 2009) (quoting Star Indus., 412 F.3d at 384). The Polaroid test "is a fact-intensive inquiry that depends greatly on the particulars of each case," and no single factor is determinative. Kelly-Brown v. Winfrey, 717 F.3d 295, 307 (2d Cir. 2013). Generally, "when applying the Polaroid factors to determine likelihood of confusion at a motion to dismiss stage, courts have not required all factors to be addressed in order to find adequate pleading of a likelihood of confusion." World

22

Trade Centers Ass'n, Inc. v. Port Auth. of N.Y. & N.J., 2016 WL 8292208, at *2 (S.D.N.Y. Dec. 15, 2016) (Swain, J.) (collecting cases).

Courts in this Circuit have applied the Polaroid factors to assess consumer confusion in the context of a competitor's purchase of search engine keywords.  Alzheimer's Disease & Related Disorders Ass'n, Inc. v. Alzheimer's Found. of Am., Inc., 307 F. Supp. 3d 260, 287 (S.D.N.Y. 2018) ("The Court will follow what is quickly becoming the majority approach in applying the eight-factor balancing test introduced by Judge Friendly in Polaroid Corp. . . ."); CJ Prods. LLC v. Snuggly Plushez LLC, 809 F. Supp. 2d 127, 158 (E.D.N.Y. 2011) ("The Second Circuit has yet to adopt a particular approach for determining the issue of consumer confusion when a competitor uses a trademark to purchase keywords to advertise its products for sale on the Internet . . . ."); see also TSI Prods., Inc. v. Armor ALL/STP Prods. Co., 17-cv-1131 (MPS), 2019 WL 4600310, at *5 (D. Conn. Sept. 23, 2019); The Universal Church, Inc. v. Universal Life Church/ULC Monastery, 14-cv-5213 (NRB), 2017 WL 3669625, at *11 (S.D.N.Y. Aug. 8, 2017).

Under the Lanham Act, "[v]irtually no court has held that, on its own, a defendant's purchase of a plaintiff's mark as a keyword term is sufficient for liability." Alzheimer's Disease & Related Disorders, 307 F. Supp. 3d at 283–84.  Judge Nathan considered a trademark infringement claim in which the Alzheimer's Association alleged that the Alzheimer's Foundation's purchase of Association marks as keywords and having the resulting advertisements use the name "Alzheimer's Foundation" established trademark infringement.  Id. The Court identified the "crucial question" as whether the Alzheimer's Foundation's "actions in purchasing Association [m]arks as keywords and advertising itself under its two-word name are more akin to a bait-and-switch likely to confuse consumers, or the simple act of offering

consumers a choice."  Id. at 286–87 (comparing the "bait and switch scenario" with a comparison advertisement where "it is clear to consumer's that the plaintiff's mark is only being used as a point of contrast"); see also Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 153 (2d Cir. 2007) (comparative advertising assessed under Lanham's Act false advertising standards requiring that plaintiff demonstrate the "advertisement is literally false" or "while not literally false, is nevertheless likely to mislead or confuse consumers").  Following a bench trial, Judge Nathan found as a matter of fact that an appreciable number of prudent consumers would not be confused based on the alleged infringement.  Id. at 299–301.

At the motion to dismiss stage, Kidmoto has plausibly alleged more than just the purchase of a competitor's mark as a search engine keyword standing alone.  The Counterclaim alleges that Kid Car purchased "KIDMOTO" as keyword on Google and that by using "kid car" in the resulting advertisement there is a likelihood of consumer confusion.  (Countercl. ¶ 71).  With the presumption of distinctiveness afforded to a registered mark, the Counterclaim plausibly alleges the "KIDMOTO" mark is distinctive.  Both Kidmoto and Kid Car are competitors in the market for transportation services targeting children in the New York area.  (Countercl. ¶ 72).  The Counterclaim asserts one example of actual consumer confusion as a result of the allegedly deceptive advertising in which a customer of Kidmoto filed a complaint with Kid Car.  (Countercl. ¶ 73).

Without a more a developed factual record, the Court is unable to determine the extent of the similarity between the marks.  The Counterclaim alleges that the use of the words "Kid Car" in the advertisements is confusingly similar to the Kidmoto mark.  (Countercl. ¶ 74).[3]

---

[3] At points in the Counterclaim, it seems to suggest that the names are not confusingly similar, asserting that even though both companies use "kid" in their names, "'moto' is not a shortening . . . of the words 'motor car.'" (Countercl. ¶ 42).

However, in determining the similarity of the marks, "courts appraise the overall impression created by the logos and the context in which they are found and consider the totality of factors that could cause confusion among prospective purchasers." Streetwise Maps, Inc. v. VanDam, Inc., 159 F.3d 739, 744 (2d Cir. 1998) (quotation marks omitted) (finding that while the names "Streetwise" and "Streetsmart" sound similar, they were "not confusingly similar, given the context in which a purchaser sees them."); Alzheimer's Disease & Related Disorders, 307 F. Supp. 3d at 291 ("With respect to the Association's claim regarding AFA's purchase of Association Marks as keywords and metatags, the proper comparison is between the resulting ads for AFA and Association advertisements or other search results."). The Counterclaim does not provide the context in which the alleged infringement occurred such as screenshots of Kid Car's advertisements, the full text of the advertisements, its placement with respect to surrounding advertisements and how Google or other search engines designate Kid Car's post as an advertisement.

It may well be that a factfinder on a complete record will find as Judge Nathan did in Alzheimer's Disease & Related Disorders. But, at the pleadings stage, the Court cannot conclude that Kidmoto's claim fails as a matter of law. Kidmoto has plausibly alleged the possibility of consumer confusion. Kid Car's motion to dismiss Counts I and III of the Counterclaim will be denied.

### 2. Kidmoto's Unfair Competition Claim under New York Common Law.

New York common law recognizes "two theories of common-law unfair competition: palming off and misappropriation." ITC Ltd. v. Punchgini, Inc., 9 N.Y.3d 467, 476 (2007); see also Bytemark, Inc. v. Xerox Corp., 342 F. Supp. 3d 496, 505–06 (S.D.N.Y. 2018) (discussing theories of unfair competition under New York Law). Palming off is the "sale of the goods of one manufacturer as those of another." ITC Ltd., 9 N.Y.3d at 476. The second theory

prohibits individuals from "misappropriat[ing] the results of the skill, expenditures, and labors of a competitor . . . ." Id. at 477.  "New York's law of unfair competition is a 'broad and flexible doctrine that depends more upon the facts set forth . . . than in most causes of action.'"  Telecom Int'l Am., Ltd. v. AT & T Corp., 280 F.3d 175, 197 (2d Cir. 2001) (quoting Roy Export Co. Establishment v. CBS, Inc., 672 F.2d 1095, 1105 (2d Cir. 1982) (alteration in original); see also LivePerson, Inc. v. 24/7 Customer, Inc., 83 F. Supp. 3d 501, 519 (S.D.N.Y. 2015) ("A claim for unfair competition requires the pleading of facts giving rise to a plausible inference that the defendant, acting in bad faith, misappropriated the plaintiff's labor and expenditures to gain a commercial advantage or maliciously interfered with the plaintiff's good will.").  In addition, a New York state law claim of unfair competition requires a showing of bad faith.  Genesee Brewing Co., Inc., 124 F.3d at 149.

As with Kid Car's claim for trademark infringement, Kidmoto's trademark infringement claim may form the basis of its unfair competition claim.  Accordingly, Kidmoto has stated a claim for unfair competition.

The Counterclaim makes additional claims of unfair competition based upon Kid Car's (1) alleged hacking of Kidmoto's and a blog's websites and (2) alleged harassment of Kidmoto's drivers.  Even assuming such conduct is cognizable as unfair competition under New York Law, the Counterclaim fails to allege facts supporting the inference that Kid Car engaged in such conduct and therefore fails to "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

Kidmoto alleges that upon information and belief Kid Car hacked its website around September 2017 after finding out about Kidmoto's operations.  (Countercl. ¶ 60).  The Counterclaim alleges that McGibbon had communications with Amber Gran, a consultant who in

July 2017 had helped Kidmoto develop security for its website.  (Countercl. ¶¶ 60–61).  It alleges "upon information and belief, [McGibbon] made surreptitious efforts to identify and communicate with Gran prior to September 2017."  (Countercl. ¶ 61).  As further support for this allegation, Kidmoto points to a September 26, 2018 email to Kidault Kar, another Kid Car competitor, in which McGibbon stated that he was "hurt and angry" about former Kid Car drivers starting competitors.  (Countercl. ¶ 62).

Kidmoto also alleges that Kid Car targeted a blog with a spam attack as a result of the website's coverage of Kid Car.  The Counterclaim asserts that McGibbon contacted BabyDoesNYC.com in or around August 2019 demanding that it "change an article it had posted regarding kid car service providers including Kid Car NY."  (Countercl. ¶ 57).  According to the Counterclaim, BabyDoesNYC.com removed any mention of Kid Car from the website after a series of harassing emails from McGibbon.  (Countercl. ¶ 57).   Less than a week later, BabyDoesNYC.com was "attacked by spam directed at an article related to Kidmoto." (Countercl. ¶ 58).  The Counterclaim alleges upon information and belief that McGibbon initiated the spam attack of the website to suppress press coverage of Kidmoto.  (Countercl. ¶ 58).

Based on the allegations in the Counterclaim, Kidmoto does not plausibly allege that Kid Car hacked Kidmoto's website or initiated a spam attack on BabyDoesNYC.com.  The Counterclaim's allegations made upon information and belief are not supported by any facts that make the inference plausible that Kid Car was the cause of the attacks.  See Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) ("The Twombly plausibility standard . . . does not prevent a plaintiff from pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant, . . . or where the belief is based on

factual information that makes the inference of culpability plausible.")  (internal citations and quotations omitted).  Kidmoto's belief is supported by nothing more than Kid Car being a competitor or Kid Car receiving negative media coverage.  Accepting as true that Kid Car had communications with the security consultant Gran or demanded that BabyDoesNYC.com change its coverage, the Complaint fails to plausibly allege facts that show Kid Car caused the hacking or spam attack.

Kidmoto's unfair competition claim concerning Kid Car's alleged harassment of drivers also fails to state a claim.  The conclusory allegations that Kid Car downloaded a publicly available app and threatened unnamed drivers with unspecified lawsuits do not plausibly state a claim for unfair competition.  (Countercl. ¶¶ 50–52).  The Counterclaim also identifies two specific drivers that were threatened.  As described below, neither of these specific examples of alleged driver harassment plausibly allege that Kid Car acted in bad faith.

First, the Counterclaim quotes a driver named Seth Behrman, who stated, "after many harassing texts and phone calls with 100 percent false accusations [McGibbon] then threatened me with legal action."  (Countercl. ¶ 51).  McGibbon allegedly accused Behrman of using Kid Car's car seats for Kidmoto customers rides, an allegation that Behrman denies. (Countercl. ¶ 51).  An allegation that McGibbon threatened litigation due to a belief that Behrman was using Kid Car's car seats for Kidmoto rides does not without more amount to bad faith.  Second, the Counterclaim identifies a former Kid Car driver named Elizabeth Shepard, who left Kid Car to start a competitor named Kidault Kar.  (Countercl. ¶ 47).  The Counterclaim does not allege Shepard was a driver for Kidmoto.  McGibbon allegedly withheld pay from Shepard and stated "[s]hould you wish to avoid a lawsuit, you must take down your website immediately."  (Countercl. ¶ 53).  The Counterclaim alleges that McGibbon refused to pay

Shepard's wages because she breached her contract with Kid Car.  (Countercl ¶ 54).  According to the Counterclaim, Kid Car has an "independent contractor" agreement that includes a noncompete clause enjoining drivers from starting competing businesses.  (Countercl. ¶ 54).  It further alleges that if Kid Car attempted to enforce the non-competition clause in court it would result in a finding that its drivers were employees, not independent contractors.  (Countercl. ¶ 54).  Kidmoto's allegations that McGibbon threatened to enforce a noncompete provision and the bare legal conclusion in the Counterclaim that such a provision is not valid does not amount to bad faith.

 3.   Tortious Interference with Prospective Business Advantage.

 Under New York law a claim of tortious interference with prospective business advantage requires that "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship."  16 Casa Duse, LLC v. Merkin, 791 F.3d 247, 261 (2d Cir. 2015).

 Kidmoto alleges that Kid Car contacted drivers who, at some point had driven for both companies, and threatened them with meritless litigation that they were in breach of their contracts with Kid Car.  (Countercl. ¶¶ 91–92).  Such allegations only identify "drivers" generally.  To the extent the Counterclaim fails to identify a specific business relationship, its claim for tortious interference with prospective business advantage cannot survive a motion to dismiss.  See, e.g., Soames v. 2LS Consulting Eng'g, D.P.C., 187 A.D.3d 490, 491 (1st Dep't 2020) (affirming dismissal of tortious interference with prospective business advantage claim where plaintiff "failed to identify any particular relationships"); McGill v. Parker, 179 A.D.2d 98, 105 (1st Dep't 1992) (concluding claim should be dismissed because "it makes only a general allegation of interference with customers without any sufficiently particular allegation of

interference with a specific contract or business relationship"); Plasticware, LLC v. Flint Hills Res., LP, 852 F. Supp. 2d 398, 402–03 (S.D.N.Y. 2012) (collecting cases where courts in this district have dismissed claims for failing to "adequately allege[] *specific* business relationships with which Defendant allegedly interfered").

Kidmoto identifies two specific drivers in its Counterclaim but these allegations also fail to plausibly allege a claim of tortious interference with a prospective business advantage. First, the Counterclaim only alleges that Elizabeth Shepard was a former Kid Car driver who started a competing business. (Countercl. ¶ 53). The allegation fails to adequately satisfy the first element of the claim requiring plaintiff to have a business relationship with a third party. Second, in the case of Seth Behrman, the Counterclaim alleges he was a driver for Kidmoto. (Countercl. ¶ 51). But the allegations regarding Behrman fail to plead that Kid Car acted with a wrongful purpose or that its acts injured Kidmoto's relationship with Behrman.

To allege wrongful means, the defendant's conduct "must amount to a crime or an independent tort" or be "'for the sole purpose of inflicting harm on plaintiffs.'" Carvel Corp. v Noonan, 3 N.Y.3d 182, 190 (2004) (quoting NBT Bancorp, Inc. v. Fleet/Norstar Fin. Grp., Inc., 215 A.D.2d 990, 990 (3d Dep't 1995), aff'd, 87 N.Y.2d 614 (1996)). "When a defendant has acted with a permissible purpose, such as 'normal economic self-interest,' wrongful means have not been shown, even if the defendant was 'indifferent to the [plaintiff's] fate.'" Merkin, 791 F.3d 247 at 262 (alterations in original) (quoting Noonan, 3 N.Y.3d at 190–91). The New York Court of Appeals has not decided whether a defendant who has harassed a plaintiff with meritless litigation may have utilized wrongful means. See Id. (citing Noonan, 3 N.Y.3d at 190–91).

Kidmoto does not allege that Kid Car's actions amounted to a crime or an independent tort.  The only asserted wrongful means employed here was the threatening of allegedly meritless litigation due to Behrman using Kid Car's car seats.  McGibbon's belief, even if incorrect as the Counterclaim alleges, that Behrman was using a Kid Car-car seat for Kidmoto rides does not amount to engaging in conduct "for the sole purpose of inflicting harm on plaintiffs."  Noonan, 3 N.Y.3d at 190.  Furthermore, Kidmoto has also failed to plead injury.  The Counterclaim does not allege that as a result of the threatened meritless litigation that Behrman stopped driving, was prevented from driving for Kidmoto or that Kidmoto lost any rides.

Kidmoto has failed to state a claim for tortious interference with prospective business advantage.

CONCLUSION

For the reasons explained, Kidmoto's motion to dismiss the Third Amended Complaint is GRANTED as to Count V but is otherwise DENIED.  Kid Car's motion to dismiss the Amended Counterclaims is GRANTED as to Count V, GRANTED in part as to Count IV, and otherwise DENIED.  The Clerk is directed to terminate the motions.  (Docs 63 and 75).

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
February 9, 2021